**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CIVIL ACTION NO. 12-82-DLB-JGW**

**RICHARD RIDDLE**                                                                         **PLAINTIFF**

vs.                    **MEMORANDUM OPINION AND ORDER**

**PORTFOLIO RECOVERY ASSOCIATED, INC.
and PORTFOLIO RECOVERY ASSOCIATES, LLC**             **DEFENDANTS**

\*\*\*   \*\*\*   \*\*\*   \*\*\*

## I. INTRODUCTION

In 2004, Defendant Portfolio Recovery Associates, LLC purchased two accounts from a utility service provider based on the representation that they were valid, due and owing by Plaintiff Richard Riddle. Both accounts were in Plaintiff's name, date of birth and social security. Plaintiff alleges those accounts are not his.

Between July 2010 and March 2011, Portfolio Recovery Associates, LLC accessed Plaintiff's credit report on eight occasions in order to update Plaintiff's account information. Plaintiff alleges that Defendants did not have a permissible purpose to access his report, and thus violated the Fair Credit Reporting Act, 15 U.S.C. §§ 1681o and 1881. Additionally, Plaintiff contends that Defendants violated the Fair Debt Collection Practices Act by accessing his credit report after receiving a letter disputing that he owed a debt to them. Finally, for each of the foregoing reasons, Plaintiff alleges that Defendants violated his right to privacy.

1

This matter is before the Court on Plaintiff's Partial Motion for Summary Judgment against Defendant Portfolio Recovery Associates, LLC (Doc. # 30) and Defendants' Motion for Summary Judgment on all claims against them (Doc. # 32). Both motions have been fully briefed (Docs. # 43, 45, 51, 52), and are thus ripe for review.

## II. FACTUAL BACKGROUND

Portfolio Recovery Associates, LLC ("PRA, LLC") is a wholly-owned subsidiary of Portfolio Recovery Associates, Inc. ("PRA, Inc."). PRA, LLC purchases and manages portfolios of defaulted and bankrupt consumer receivables; in other words, PRA, LLC is a debt collector. On February 10, 2004, PRA, LLC purchased two defaulted accounts from Aquila, Inc., a utility service provider. Aquila represented that the two accounts were valid, due and owing by Richard Riddle. Aquila also provided identification information, such as Riddle's date of birth and social security number, to corroborate its representation that the accounts were Riddle's. Both accounts were for loans extended in 1999, with the last payment received in 2000. Both accounts were charged off later in 2000.

PRA, LLC's electronic records indicate that it tried to contact Riddle on three occasions in 2004. On two occasions, PRA, LLC attempted to contact Riddle via mail using an address provided by Aquila at the time the accounts were purchased. And on one occasion, PRA, LLC attempted to call Riddle at a number proved by Aquila. However, all of these attempts failed because the contact information provided by Aquila was either outdated or incorrect. On September 23, 2004, both accounts were placed in "out of statute" status, and PRA, LLC made no further attempts to contact Riddle.

PRA, LLC did, however, continue to receive information about each account from the credit reporting agency, Trans Union, LLC. Whenever Trans Union received updated

account information about Riddle, including a change of address or telephone number, or an increase in credit limits, Trans Union would automatically forward that information to PRA, LLC. Plaintiff asserts that eight inquiries were made between July 24, 2010 and March 1, 2011. However, PRA, LLC's records indicate that it only received credit information from Trans Union on four occasions: July 24, 2010, September 27, 2010, December 2010, and March 1, 2011.

All of the inquiries were listed on Riddle's consumer report as "account review inquiries." PRA, LLC characterizes "account review inquiries" as "soft pulls" or "soft inquires." This type of inquiry, PRA, LLC claims, is not visible to any creditor or third party, and does not adversely impact the consumer's credit score. Rather, the inquiries are only listed on a consumer report requested by the consumer.

Sometime in early 2011, Riddle reviewed his Trans Union credit report and noticed multiple account reviews conducted by PRA, LLC. Riddle did not recognize PRA, LLC as a creditor, so he sent the company a letter requesting an explanation of the inquiries and disputing the accounts. PRA, LLC received the letter on February 24, 2011, and entered Riddle's dispute into its electronic records on March 1, 2011. On that same day, PRA, LLC claims it purged Riddle's accounts and ceased all activity on the accounts. However, at some time on March 1, 2011, a final account inquiry was made on Riddle's Trans Union report.

Based on the foregoing, Riddle filed suit in Kenton County District Court against Portfolio Recovery Associates, Inc. and Portfolio Recovery Associates, Inc. The Complaint alleged that Defendants violated Plaintiff's rights under the Fair Credit Reporting Act. Defendants subsequently removed the action to this Court on March 16, 2012 pursuant to

28 U.S.C. § 1441(a). Plaintiff thereafter amended his Complaint, adding claims for violations of the Fair Debt Collection Practices Act and his right to privacy.

### III. ANALYSIS

#### A. Standard of Review

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The "moving party bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008). The moving party may meet this burden by demonstrating the absence of evidence concerning an essential element of the nonmovant's claim on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the movant has satisfied the burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, it must produce specific facts showing that a genuine issue remains. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000). In doing so, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). If, after reviewing the record in its entirety, a rational fact finder could not find for the nonmoving party, summary judgment should be granted. *Ercegovich v. Goodyear Tire*

*& Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

**B.    Parent Company Liability**

Portfolio Recovery Associates, Inc.[1] argues it is entitled to judgment as a matter of law because it is merely the parent company of PRA, LLC, and had nothing to do with the accounts or account reviews at issue in this case. The record supports PRA, Inc.'s factual assertion; PRA, Inc. did not purchase or own the accounts at issue, nor did it review Plaintiff's consumer report. Thus, PRA, Inc. cannot be directly liable for any of the alleged violations of federal or state law.

The only question is whether PRA, Inc. is somehow liable for the actions of its subsidiary, PRA, LLC. As a general rule, a parent company is not automatically liable for the actions of its subsidiary, even if the subsidiary is wholly owned. *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 724 (6th Cir. 2007) (citing *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in our economic and legal system that a parent corporation . . . is not liable for the acts of its subsidiaries.")). Rather, the party attempting to impose liability on the parent company must show it is the alter ego of the subsidiary company. *Id.* Plaintiff has offered no argument, or set forth any facts, to suggest that PRA, Inc. is the alter ego of PRA, LLC. Having failed to do so, PRA, Inc. is entitled to judgment as a matter of law.

**C.    Fair Credit Reporting Act Claim**

Plaintiff alleges that PRA, LLC violated the FCRA when it negligently and willfully accessed his credit report as many as eight times between July 2010 and March 2011.

---

[1] The Amended Complaint names Portfolio Recovery Associat<u>ed</u>, Inc. as the Defendant. However, that company's actual name is Portfolio Recovery Associat<u>es.</u>, Inc., and will be referred to as such herein.

*See* 15 U.S.C. § 1681o (creating a private right of action for negligent violations of the FCRA); 15 U.S.C. § 1681n (creating a private right of action for willful violations of the FRCA). The FCRA prohibits any person from obtaining a consumer report unless it "is obtained for a purpose for which the consumer report is authorized to be furnished [by the Act] . . . . " 15 U.S.C. § 1681b(f). However, a user is free from civil liability so long as it accesses a consumer report with "reason to believe that a permissible purpose exists." *Korotki v. Atty Servs. Corp. Inc.*, 931 F. Supp. 1269, 1276 (D. Md. 1996) (collecting cases). The question is thus whether PRA, LLC had reason to believe it had a permissible purpose to access Plaintiff's credit report.

### 1. Account Reviews Generally

PRA, LLC correctly claims it was permitted by 15 U.S.C. § 1681b(a)(3)(A) to access Plaintiff's consumer report. That portion of the FCRA permits a user to obtain a consumer report if it "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." 15 U.S.C. § 1681b(a)(3)(A). PRA, LLC had reason to believe it held two of Plaintiff's accounts. After all, it owned two past-due and owing accounts in Plaintiff's name, date of birth, social security. Furthermore, PRA, LLC accessed Plaintiff's consumer report with the intended purpose of updating his location information, which is a form of account review. Thus, PRA, LLC did exactly what it was permitted to do by 15 U.S.C. § 1681b(a)(3)(A) when it accessed Plaintiff's consumer report.

Plaintiff disagrees with the Court's conclusion on three grounds, none of which have merit. First, he argues that facts in the record suggest Plaintiff was not the debtor on the

accounts at issue. A review of the record does not support this contention. At best, Plaintiff has pointed to facts that suggest the accounts were old, noting that they were charged off in 2000 and purchased by PRA, LLC in 2004. But these facts say nothing about whether the accounts were Plaintiff's. Moreover, Plaintiff admitted at his deposition that he did not know whether he ever had an account with Aquila, Inc. He was not even able to show that he received utility services from any other provider during the time covered by the Aquila, Inc. accounts in an effort to show it was impossible he had an account with Aquila, Inc. Plaintiff did, however, admit during his deposition that the social security number and date of birth associated with the accounts at issue were his. With these facts, even if the accounts were not Plaintiff's, PRA, LLC certainly had reason to believe they were. As such, Plaintiff's first argument is unconvincing.

Plaintiff's second argument fares no better. Plaintiff argues that any claim on the accounts would be barred by Kentucky's applicable five-year statute of limitations, K.R.S. § 413.120(1), and, thus, the accounts were effectively extinguished. Plaintiff likens this to a case where a bank accessed its customer's consumer report even though the customer's mortgage account had previously been discharged through bankruptcy. *Godby v. Wells Fargo Bank*, 599 F. Supp. 2d 934, 942 (S.D. Ohio 2008). The court held that the bank was not permitted to access the customer's consumer report because there was no longer an account upon which to collect. *Id.* Plaintiff asserts that there is no logical difference between a debt that has been discharged and an account that is no longer collectible because it is outside the statute of limitations. Plaintiff is mistaken. Unlike when a debt is discharged through bankruptcy, Plaintiff's debt remains even if the statute of limitations has run. *See Brewer v. Portfolio Recovery Assoc.*, No. 1:07-cv-113-M, 2007 WL 3025077,

7

at *2 (W.D. Ky. 2007) (holding as a matter of Kentucky law that "the statute of limitations affects the debt collector's remedy, but it does not eliminate the debt."). As the Kentucky Supreme Court has long recognized, "'a statute of limitations does not extinguish the legal right but merely affects the remedy.'" *Id.* (quoting *Wethington v. Griggs*, 392 S.W.2d 56, 67 (Ky. 1965)). Thus, contrary to Plaintiff's assertion, the statute of limitations does not operate to extinguish the debt.

Plaintiff's third and final argument is likewise devoid of merit. Plaintiff argues that the two accounts at issue did not involve a "credit transaction" and thus any review on the accounts was not permitted by 15 U.S.C. § 1681b(a)(3)(A). Plaintiff recognizes that the accounts were purchased from Aquila, Inc., who is a utility service provider. Plaintiff contends that a utility service provider does not extend credit. Rather, according to Plaintiff, "a consumer of utility services is billed and, typically, expected to pay the outstanding amount upon receipt; otherwise, the service will be suspended or cut off." (Doc. # 30 at 10). He supports this position by citing to decisions where residential leases were not recognized as credit transactions. *See Larramore v. Ritchie Realty Mgmt.*, 397 F.3d 544 (7th Cir. 2005); *Liberty Leasing v. Machamer*, 6 F. Supp. 2d 714 (S.D. Ohio 1998). He believes that utilities services and residential leases are similar in that payment is expected each month or the service/lease is discontinued.

Another court has convincingly rejected a similar argument that the payment arrangement for a residential lease is somehow similar to the arrangement of a utility provider. In *Murray v. New Cingular Wireless Services, Inc.*, the Northern District of Illinois rejected the idea that a residential lease is akin to a cell phone service contract. The court held as follows:

8

> We also agree with Cingular that Murray's reliance on *Laramore v. Ritchie Realty Mgmt. Co.*, 397 F.3d 544, 547 (7th Cir.2005), is misplaced. In that case, the Seventh Circuit held that a typical residential lease is not a credit transaction because the tenant pays rent to the landlord on the first of each month for the right to continue to occupy the premises for the coming month. It is, rather, a contemporaneous exchange of money for the services rendered or the products sold, not an actual deferral of payment. *Id.* In contrast, wireless customers pay for services after the actual use of the services. *By definition, such a payment scheme puts Cingular at risk that the customer could default on payment—which is essentially what credit is all about.*

*Murray v. New Cingular Wireless Services, Inc.*, 432 F. Supp. 2d 788, 791 (N.D. Ill. 2006).

The Court agrees with the *Murray* Court's reasoning. The FCRA defines "credit" as "the right . . . to purchase property or services and defer payment therefore." 15 U.S.C. § 1691(a)(d). That is the exact nature of any utility service provider's business: services are provided throughout the course of billing cycle, and the consumer defers payment on the services until the end of the billing cycle. As such, the accounts at issue – purchased by PRA, LLC from Aquila, Inc. – do involve "credit transactions" as that term is used in 15 U.S.C. § 1681b(a)(3)(A).

### 2. March 1, 2011 Account Review

Even if the first seven account reviews were permissible, Plaintiff argues that PRA, LLC had no permissible purpose to review his account on March 1, 2011. Plaintiff asserts that he sent PRA, LLC a letter of dispute on February 21, 2011, which contained his location information. With that information on file, PRA, LLC did not need to review his consumer report on March 1, 2011 to update his location information. Plaintiff therefore argues that PRA, LLC's stated purpose for reviewing his consumer report on March 1, 2011 was not entirely truthful.

PRA, LLC responds that even if it impermissibly accessed Plaintiff's consumer report on March 1, 2011, it did so in good faith. PRA, LLC entered Plaintiff's letter of dispute into its electronic system on March 1, 2011 and purged Plaintiff's account that same day. At some time during that day — it is unclear whether it was before or after the accounts were purged — Trans Union automatically sent Plaintiff's updated location information to PRA, LLC; PRA, LLC did not affirmatively seek the information on that day. According to PRA, LLC, this was simply bad timing and, at worst, a good faith error.

PRA, LLC aptly analogizes this case to *Trikas v. Universal Card Services Corp.*, 351 F. Supp. 2d 37 (E.D.N.Y. 2005). In that case, a bank continued to review its customer's consumer report after the customer's account was closed. *Id.* at 39-40. The bank explained that this error was caused by its failure to properly code the customer's account as closed. The customer sued for a violation of the FCRA, arguing that the bank did not have a permissible purpose to review his consumer report because his account had been closed. The court disagreed, holding that the bank was permitted by 15 U.S.C. § 1681b(a)(3)(A) to review customer's consumer report. In doing so, the court found that the statute required an analysis of the bank's intent in accessing the report. The court concluded that "the intention behind the Bank's periodic requests for Plaintiff's consumer report was merely to review his account, albeit an account that should have been closed." *Id.* at 42. These reviews did not amount to a violation of the FCRA.

The Court finds *Trikas* applicable to the case *sub judice*. Although the exact time line is not clear, the Court assumes that Plaintiff's accounts had been purged prior to his consumer report being accessed on March 1, 2011. Like the court held in *Trikas*, "the intention behind [PRA, LLC's] periodic request for Plaintiff's consumer report was merely

to review his account, albeit an account that [was] closed." *See id.* That is permitted by 15 U.S.C. § 1681b(a)(3)(A). Thus, the March 1, 2011 review did not violate the FCRA.

### D. Fair Debt Collection Practices Act Claim

Plaintiff alleges that PRA, LLC's debt collection activities violated the Fair Debt Collection Practices Act ("FDCPA"). According to the Complaint, the last alleged debt collection activity occurred on March 1, 2011 when PRA, LLC accessed Plaintiff's consumer report.[2] The Fair Debt Collection Practices Act provides that any claim under the Act must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Thus, any action must have been brought no later than March 1, 2012. However, Plaintiff did not bring raise his FDCPA claim until he filed his Amended Complaint on March 28, 2012, twenty-seven (27) days after the statute of limitations had run. As such, Plaintiff's FDCPA claim is time-barred.

### E. Invasion of Privacy Claim

Finally, Plaintiff alleges that PRA, LLC invaded his common law right to privacy by accessing his credit report. PRA, LLC has moved for judgment as a matter of law on this claim. Plaintiff did not respond to this motion.

The Kentucky Supreme Court has adopted the Restatement (Second) of Torts' definition of the invasion of privacy tort, which has four subtypes: (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of the other's name or likeness; (3) unreasonable publicity given to the other's private life; and (4) publicity that unreasonably places the other in a false light before the public. *McCall v. Courier-Journal*

---

[2] The Court does not need to decide whether this amounted to a debt collection activity.

*and Louisville Times Co.*, 623 S.W.2d 882, 887 (Ky. 1981).  Plaintiff's Amended Complaint gives no help as to which of these four invasion of privacy claims he is raising.  Based on the facts produced through discovery, the Court will presume Plaintiff's invasion of privacy claim is for unreasonable intrusion upon seclusion.

No Kentucky court has explained the elements required to prove unreasonable intrusion upon seclusion.  In *Smith v. Bob Smith Chevrolet, Inc.*, 275 F. Supp. 2d 808, 822 (W.D. Ky. 2003), the Western District of Kentucky predicted that the Kentucky Supreme Court would adopt the Restatement's definition of the tort.  *Id.*  That prediction seems reasonable in light of the fact that Kentucky has adopted the Restatement's broad definition of invasion of privacy.  According to the Restatement, an intrusion upon seclusion involves the "'intentional intrusion, physical or otherwise, upon the solitude or seclusion of another . . . if the intrusion would be highly offensive to a reasonable person.'"  *Id.*  (quoting Restatement (Second) of Torts § 652B (1977)).

Plaintiff has not set forth sufficient facts to demonstrate that the intrusion would be highly offensive to a reasonably person.  For the reasons previously explained, PRA, LLC had reason to believe it was permitted by federal law to access Plaintiff's consumer report.  After all, PRA, LLC owned two past-due accounts in Plaintiff's name, date of birth and social security number, and accessed Plaintiff's report to update Plaintiff's account information.  This is the type of conduct that society recognizes as a necessary function of the debt-collection business.  Without being able to update account information, debt-collectors would be left with little chance of tracking down debtors.  As such, PRA, LLC is entitled to judgment as a matter of law on Plaintiff's invasion of privacy claim.

## IV. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1) Plaintiff's Motion for Partial Summary Judgment (Doc. # 30) is hereby **DENIED**;

(2) Defendants' Motion for Summary Judgment (Doc. # 32) is hereby **GRANTED**;

(3) Plaintiff's Amended Complaint is hereby **DISMISSED WITH PREJUDICE** and **STRICKEN** from the active docket of this Court; and

(4) A Judgment in favor of Defendants shall be entered concurrently herewith.

This 26th day of March, 2014.



Signed By:
*David L. Bunning*    DB
United States District Judge

G:\DATA\Opinions\Covington\2012\12-82 MOO granting Ds' MSJ and denying P's MSJ.wpd